All right, our next case, GEIC Oetal v. Mount Prospect Chiropractic, GEIC Oetal v. Care and Pain Management, GEIC Oetal v. Alcoaley. Let's go ahead and... We'll hear from counsel for the appellants. Please. Good morning, Your Honors. Andrew Gimignano of Mandelbaum Barrett on behalf of all of the appellants. With the court's permission, I'd like to reserve three minutes for rebuttal. Okay. This appeal is a question of statutory interpretation. And that question is whether or not the New Jersey Insurance Fraud Prevention Act prohibits arbitration of those claims. And if the court determines that the New Jersey Insurance Fraud Prevention Act does not preclude arbitration, the district court orders in this appeal should be reversed and the matter should be ordered to arbitration. I'd like to use my time... Why doesn't the New Jersey Arbitration Act just resolve the case? I'm sorry? So this was brought under the FAA, the... Basically, yeah, GEICO is alleging that there was some fraud involved. The question is the doctors want to arbitrate everything by way of the plan says you have to do arbitration. New Jersey has a, you know, predilection to having cases arbitrated. You have the New Jersey Arbitration Act, which kind of follows the Federal Arbitration Act. And the only thing you have is, are fraud claims in some way different? No. The Consumer Fraud Prevention Act is a New Jersey statute that is closely analogous to the IFPA, as can be same rights and remedies, private cause of action, attorney's fees and costs, and Consumer Fraud Act claims are arbitrable. My guess is that what was involved here with respect to this particular aspect of the case, the New Jersey Fraud Act, is that the court is looking at the intermediate court decision in FIORAS. How would you distinguish FIORAS? So FIORAS is really where everything goes wrong, as Your Honor is indicating. So FIORAS is about whether or not fraud in the procurement of an insurance policy is arbitrable under the no-fault law. The no-fault law requires arbitration of recovery of benefits. The panel in that case, looking at that issue, said the recovery statute, medical necessity, whether services were rendered, that does not contemplate fraud in the procurement. So fraud in the procurement is not arbitrable under the no-fault law. Then when the panel made that statement about the IFPA, what the panel was saying is that it's not mandatorily arbitrable. The reason we know that is because the final paragraph of FIORAS mentions that, and I'd like to quote it, our conclusion that NJSA 39-6A-5.1 does not mandate submission of an issue of fraud in the inception of a policy to PIP arbitration, does not preclude the insured and the insurer from voluntarily agreeing to arbitrate this issue. In other words, yeah, we understand your position. I understand the position. You didn't really make much of that in your briefing, though, did you, this last paragraph? Explain, if this is the money language, how come it didn't get much play from you, and how come it's got every district court in New Jersey that's looked at this, apparently, confused about what it means? I think that that one sentence was taken out of context. One court said the IFPA is not arbitrable. There's no analysis of that same language. May sue in a court of competent jurisdiction. The United States Supreme Court, the New Jersey Supreme Court, this circuit court have all said that language merely means that a judicial forum is available. It does not say that an arbitration forum is unavailable. There's no way to square the language in the IFPA about a court of competent jurisdiction with all of the other remedial statutes, including the Consumer Fraud Act, the New Jersey Logins Act. Even Fioris, by your reading and account, even Fioris is supportive of the notion that this is arbitrable, right? Because isn't that the import of the last paragraph piece that you read? My position is that Fioris supports that contractual arbitration of an IFPA claim is permissible. That's exactly what the panel said in Fioris. They said there's nothing that would preclude the parties from agreeing to arbitrate. And we need to remember that this arbitration provision was drafted by GEICO. It's a take it or leave it provision. It encompasses any and all disputes. And now GEICO wants to pick and choose which disputes would fit within to that arbitration provision. And they're hanging their head on a New Jersey intermediate court decision, which in that case talked about fraud, at least in the application for insurance, being not arbitrable. Not mandatorily arbitrable. You're right. And I think that's the difference, is that if there's an agreement to arbitrate, then the analysis of mandatory arbitration under the PIP law can even be set aside. And you're saying that there's an agreement to arbitrate, plus there's a plan that calls for arbitration. That's correct, Your Honor. Plus the forms that are submitted by the doctors itself says that there's arbitration. Correct, Your Honor. And I think that there's another New Jersey intermediate court decision, GRAS, which is talking about the CFA. And in that case, the court looked at the history and text of the CFA, the Consumer Fraud Act, which has the same language about judicial form availability. It said nothing in the history and text precludes arbitration. And then in weighing out whether arbitration is appropriate, looking at how all the rights and remedies under the statute can be found in arbitration, the panel concluded when we consider rooting out fraud, the purpose of the CFA, in balance with the court's favoring arbitration, even considering those in equipoise, when the parties agree to arbitrate, the statute's purpose is met. I got your briefing on that and understand it. Let me ask some specific questions about the individual cases. First, as to what I'll call the Hassan defendants. I'm sorry, I couldn't quite hear you, Your Honor. Hassan defendants? Dr. Hassan. Yeah. There's an argument by GEICO that in that particular case, we don't have jurisdiction to consider your arguments here because they repled, they were allowed to replete, done. Since you're, what's... That's the, that applies just to Al Coley. Yeah, but I thought that their argument here was that the district court had said, hey, you've got an arbitration agreement. It's valid as to the RICO and common law and unjust arrestment frauds. But with the PIP benefits, that would be arbitral. However, however, I'm going to grant GEICO's request for leave to amend. Now, maybe I've got it wrong. Maybe that's Al Coley, but I thought that was the Hassan defendants. That is Hassan. I apologize, Your Honor. That is. So the, I mean, I do have a question about Al Coley in just a second. But here, GEICO is saying, look, we were allowed to replete, and that takes us out of the interlocutory appeal piece of the FAA. You don't even have a right to hear this. I just want you to tell us why they're wrong about that, if they're wrong. The order still favors litigation over arbitration under section 16 of the FAA. The order is appealable to the extent that it denies arbitration. Well, you cite the alighter. I hope I'm saying that case right. You cite that case, but is there, you know, which has that favors litigation, excuse me, favors arbitration over litigation language. But their assertion is, that may be so, but the general rule is district courts have power of their docket. They allow repleting. If they've allowed repleting, they've allowed it. That moots your issue. Well, the court has discretion. Generally under leave to amend, motion for leave to amend, the court has discretion to grant leave to amend. I would submit that where the court finds that there is an enforceable arbitration agreement and the claims are within the ambit of that agreement, that ends the inquiry. It has to be sent to arbitration. I'd say it's an abuse of discretion to allow amendment after finding that there's an enforceable arbitration agreement. That gives this court jurisdiction to consider the order that is ultimately denying. Abuse of discretion is your assertion. It was an abuse of discretion in light of the statutory language. It's a misapplication of the law, Your Honor. Okay. Al Coley, explain to me how we have jurisdiction there when there was not an appeal of the district court's ruling in that case with respect to repleting and there was an amended complaint filed. And that amended complaint is, as Geico puts it, not in front of us. How can we have jurisdiction to deal with a pleading that is technically not in front of us? Well, so in that case, the claims and the parties are the same. There's still an IFPA claim. There's still all the other claims, and the order Yeah, but that, it may be that it's the same parties. It may be that the claims are very, very similar. But it's a different pleading, and it's not the pleading that is the subject of the court's ruling that you're troubled by. Right? It is, I would say it's the same claims. The allegations are all essentially the same. There are some minor differences. There's still an IFPA claim in that case. And that could be compelled to arbitration. And I would submit, Your Honor, that if ultimately if the court determines that there is no jurisdiction over that appeal, the issue of whether or not an IFPA claim is still squarely in front of the court in the other cases. And if this court determines that an IFPA claim is arbitrable, we'll simply file, renew the motion in Alcoley, and the district court would follow this court's guidance. That may well be. All that may be true, but that doesn't answer the jurisdictional question, right? And what I'm hearing is maybe there's not an answer to the jurisdictional question there. In the end, you might get what you want, but it won't be because we ruled on Alcoley if, in fact, the pleading isn't in front of us. Right? I would say that, and the case that we cited, American Neighborhood Mortgage, I recognize it's an unpublished circuit court case. But in that case, it had a similar scenario where a party had filed an amended complaint, and the court denied the motion as moot. And this circuit said we still have, it's a denial of a motion to arbitrate. So we still have jurisdiction over that denial. We don't, we're appealing from the order, not the opinion, of whether or not it's moot. There's still a live IFPA claim in the case. The motion that we would file with respect to the new pleading would not change at all in substance. Okay. Well, thanks. Thank you, Your Honor. We'll hear from Rebuttal, and we'll hear from counsel for GEICO. Please. Good morning. May it please the court. My name is Max Gershenoff. I represent the GEICO appellees in this case. Appellants argue that a plaintiff insurer's IFPA claims can be resolved behind a cloak of secrecy in private arbitration. But if you don't want to arbitrate the IFPA claims, why are they included in the plan's broad arbitration clause? Well, I would say, Your Honor, that as a threshold matter, the plan's broad arbitration clause doesn't specifically indicate that statutory claims such as the IFPA are subject to arbitration number one. It is so clear. It is the broadest language possible. You agreed to it. You drafted it. It's probably a contract of adhesion. Your Honor, I would say in the first place, typically, to the extent that courts have found that any kind of statutory claims in New Jersey are subject to arbitration, there has been a much clearer waiver of statutory rights in the context of the applicable arbitration agreement. And I would also say, Your Honor, that in order to have standing to compel arbitration of any kind of claim under the plan, the plan is very clear that a health care provider has to have a specific assignment of benefits in a particularized form. You guys, you paid these people over extended periods of time. And in the Alkali case, the district court took that argument on directly and said, I'm not hearing you say these people don't have assignments. There's a long course of conduct here. If there wasn't a specific assignment, I mean, this is I'm putting words in the court's mouth, you're either the biggest fools in the world, which the court didn't think, or there was an assignment. You acted and behaved as if there were an assignment over an extended period of time. So I'm not sure you're going to get much traction with your standing argument. So why don't you talk about that? Let's talk about the McCarran reverse preemption argument. That's the heart of this case. Yes, Your Honor. And this is a very general may sue statute. Why should we read that as specific and clear enough to reverse preempt? Here's why, Your Honor. The McCarran Ferguson Act will reverse preempt where there is impairment, invalidation or supersession. And starting with respect to the may sue therefore language, the language was clearly intended to give insurers the option to sue the court. Option. And you contracted for arbitration here. You contracted away that option. Well, I would dispute that we contracted for arbitration, but just with respect, just to start with the may sue therefore language, it would obviously impair and supersede an insurer's option to sue in court if that option were to be replaced with a substitute rule requiring arbitration. But there's more. Your argument is that you could never contract away your option to arbitrate or to file suit in court because somehow the language of the IFPA is making you not arbitrate. That has to be your argument, right? Your argument has to be the IFP makes us go to court. It doesn't allow us to go to court. It makes us go to court. Not exactly, Your Honor, and here's why. First, we have the option to sue in court under the IFPA. It's true that we're not obligated to sue in court. We're not mandated to sue in court, but we have the option to sue. And under McCarran Ferguson jurisprudence, if it were to be replaced with a rule compelling arbitration under the FAA. It doesn't compel. That's like you, I don't understand what sleight of hand is going on here, but there's nothing in McCarran Ferguson that says you would have to do this. There's nothing in the IFPA that appears. You agree that it's an option. What you're trying to say is when we exercise our contractual right and we don't like the way it turns out, then that results in us being deprived of an option. I mean, it feels like there's a horse and cart problem here. You're trying to say we chose to do something, and having chosen to do that, we are now without our option, and because we're without our option, there's a McCarran Ferguson problem. Isn't there a problem with that logical chain? To the extent that the court finds a problem with that logical chain, Your Honor, I'm not so sure there is a problem. There are other aspects of the IFPA that would also be impaired and validated or superseded if a claim under the IFPA were to be compelled to arbitration. The IFPA requires insurers to give notice of lawsuits to the Commissioner of Insurance and permits the Commissioner of Insurance to intervene in those lawsuits, not in the context of a private arbitration, for purposes of seeking a civil penalty. And what's more, those civil penalties are then deposited under the IFPA into a fund to make insurance available. Is it the Consumer Fraud Act? No, the Consumer Fraud Act doesn't regulate the business of insurance, Your Honor. It's a close statutory analog. The wording is the same, and the New Jersey Supreme Court treated it as, you know, this is just an option. May I distinguish the Consumer Fraud Act in a material way, Your Honor? The Consumer Fraud Act does require a plaintiff to give notice to the Attorney General, not the Commissioner of Insurance, and it specifies that the Attorney General can intervene in any manner appropriate to the action. It doesn't specifically provide like the IFPA. Isn't that analogous to what you're saying here? You seem to be saying there's a public interest here and a public official can get into it, and that makes it different. But it's not different because that's exactly the circumstance in the CFA. Well, wouldn't it impair the IFPA, Your Honor, if all plaintiff insurers' Insurance Fraud Prevention Act claims were required to be filed in sort of the black box of a private arbitration without any notice to anyone, no ability to seek the civil penalty, which is intended, by the way, under the IFPA, you know, to be deposited into a fund to make insurance available to people who otherwise could not afford it. The IFPA is a comprehensive statute that was designed for a specific purpose. Let's talk about how the New Jersey courts have interpreted IFPA. Talk to us about FEORUS. You've heard what your colleague across the aisle there has said. When I read the language, our conclusion that, and then it cites the no-fault statute, does not mandate submission of fraud in the inception to PIP arbitration, does not preclude the insured and insurer from voluntarily agreeing to arbitrate this issue. That seems quite clear. That seems abundantly clear. It seems like the very court on which you hang your hat and the district courts have hung their hats said, we're not saying you can't contract out of this. You can. And it appears you did. So why is that language from FEORUS not, like, why isn't that just game up right there? The only authority that's decided by any of these district courts is the earlier language in FEORUS, which appears to be, as your colleagues have put it, put in a better, a more understandable context by this later language. How is that wrong? Well, I would say at first, Your Honor, that as the court said in FEORUS, it's clear that the legislature, let's start there, didn't contemplate that an IFPA claim would be heard by an arbitrator. Here we're determining whether the IFPA, under the McCarran-Ferguson Act, reverse preempts application of the FAA. And I think that if- Address the language I just asked you to address. You've just quoted the language, and it's in there, and we understand it, and we know the district courts have relied on it. But speak to the language quoted by your colleague, which I've just reread to you, where the court says, hey, don't misunderstand us. Nothing we're saying here, quote, precludes the insured insurer from voluntarily agreeing to arbitrate this issue. Well, I would say, Your Honor, to the extent that there is any contention that the parties have voluntarily agreed to arbitrate IFPA claims, every one of the cases that the defendants or the appellants have cited, wherein a court compelled arbitration of a state statutory claim, as opposed to denied a motion to compel arbitration of a state statutory claim, there was a very clear waiver in the arbitration agreement that the statutory claim had been waived. Let me try another way. If you have all of these items that are arbitrable, under the plan, under the application form submitted by the doctors for benefits to be paid, if they sued you, could you not say this should be subject to arbitration? Let's say they sued GEICO claiming that somehow GEICO was fraudulent in some way, shape, or form. They wouldn't be able to file that suit in the first place, Your Honor, because the damages would presumably be the unpaid no-fault insurance benefits, and every New Jersey court to have ever considered the issue has held that there is no. Let's take it off the table. If they sued you and you wanted to arbitrate, wouldn't you say that our plan requires arbitration? If the measure of damages was unpaid no-fault insurance benefits, then yes, Your Honor, we would. So what's good for the goose should be good for the gander, right? No, because this statutory claim under the Insurance Fraud Prevention Act is different from a claim for unpaid PIP benefits. It's the Quaker Oats defense. Arbitration for me, but not for thee. What's the... How does it make sense to say... You've got to explain that one, by the way. That dates me, right? How does it make sense to interpret the arbitration agreement that GEICO drafted in a way that says, hey, everything we like goes to that black box that no one can look into that we call arbitration, but when you want to go there, you can't go there because McCarran-Ferguson kicks in and our rights are being superseded. I think you've got to look at the plain language of the arbitration provisions in the plan, Your Honor, and the plain language covers disputes regarding the recovery of PIP insurance benefits. Well, it does do that. I think there's a distinction. Let's do look at that language. That language is extraordinarily broad. I'll see if I can find it, but my recollection is it says things like anything related to, anything connected to. It feels like very smart lawyers sat down and said, how can we throw this net as widely as possible and drive things to private dispute resolution? I would disagree, Your Honor. I think that the dispute resolution language, which I'm looking at right here... Hey, quote it. Okay. If there is a dispute as to any issue arising under this decision point review pre-certification plan or in connection with any claim for personal injury protection benefits, a request for the resolution of that dispute may be made by the insured eligible injured person, Geico, or a treating health care provider who has a valid assignment of benefits. Okay. So there's any claim arising under or in connection with. Yes. Where's your wiggle room? Where's your, in that language, where's your space to say, well, we didn't mean this? The first thing I would point out, Your Honor, is that that language, unlike the language in the cases where courts in New Jersey have compelled arbitration of statutory claims, is nowhere near as specific with respect to the waiver of the statutory claims as in the cases cited by the defense or any others that I've been able to find, Your Honor. In the cases where the New Jersey courts have compelled arbitration of statutory claims, whether under the Consumer Fraud Act, the Law Against Discrimination, or any other statute, there has always been much more particularized language, either specifically waiving the statutory right to sue, number one, providing a specific framework for how the arbitration is going to be conducted, making clear that all of the rights that the party would have under the state statute are also present in the context of an arbitration. It's not enough to say any claim arising under or in connection with you think Geico was entitled to more, even though Geico was the one that drafted it. In the cases that, yes, I do, Your Honor, because, again, and the notion that if there is some problem with this and the breadth is, I guess what I'm getting to is, does the idea of interpreting contractual provisions to the advantage of the person on the opposite side and against the drafter, does that have any play here at all when we look at this contractual language or none? I think that it doesn't, Your Honor, in the context of this particular language and in the context that brings us here today where the court is being asked to compel arbitration of a statutory claim that has never been compelled to arbitration. Just so I could put a point on it, your legal position is we drafted it, we said anything arising under or in connection with, and we could have been clearer. In fact, we could have, if we really wanted to limit ourselves here, we could have said it. But we're not bound by that because there's something about IFPA special that makes it a statutory right that we couldn't have waived without more specific language. Even though IFPA only uses the word may. I think, yes, Your Honor, again, that has been the outcome in all of the other New Jersey cases. All the other New Jersey cases, CFA, SEPA, the wage and hour law, the law against discrimination, all of which have been briefed at length, all of which have language that's similar to the IFPA language, have been held to be arbitrable by the New Jersey Supreme Court and uniformly by the appellate division. All of that, your assertion is that's all of no moment. We are deserving of more because this is IFPA. Not exactly, Your Honor. Yes, other state statutes that provide a private right of action have been compelled to arbitration in some cases. But in other cases, they have not been compelled to arbitration, even where there was a generally broad arbitration clause without specific language in the arbitration clause mandating arbitration of statutory claims or else replacing that you had to have a specific contractual provision that says we have a broad arbitration provision just so it's understood included in excised from that, is that if it involves fraud, it does not involve arbitration. It goes to court, correct? That's what you're saying. There's an exception. Yes, but I would I would add as well, Your Honor, that typically where these courts in New Jersey have compelled arbitration of statutory claims providing a right of action, there has been some language in the arbitration clause regarding the waiver, specifically regarding the waiver of statutory rights. And that's absent here. And I would think, Your Honor, that to the extent there's any doubt about that, perhaps certification would be warranted. Well, if there's at this point, you got it. I'm not sure there's an argument. There's not a whole lot of doubt. The New Jersey Arbitration Act is very pro arbitration. The plan here is very pro arbitration. You have a state law that favors arbitration and it doesn't get reverse preempted by McCarran Ferguson. And you're saying that somehow impliedly because of the statute, the idea that if you detect fraud from a doctor, you may sue. You can somehow force that case into a suit in court, not arbitrable, even though the plan says all things are arbitrable. I can't figure a way out of this. May I address that? Sure, Ken. I think that the court's focus up until now in this argument has been on the may sue, therefore, language. But there are very many other important remedial provisions of the IFPA that would be completely vitiated if claims were compelled to arbitration. For example, it would defeat the commissioner of insurance's right to intervene for purposes of seeking a judgment for a civil penalty. How could the insurance commissioner get an arbitrator to issue a judgment for a civil penalty? Isn't that in your hands, your client's hands? Your client didn't have to agree to arbitration. Your client did not have to frame this the way it framed it. It could easily have said, but if there's allegations of fraud, that's not arbitrable because IFPA's there and we want the rights associated with it. Just so you know. When you say, look at all these important things, the benefit of which the insurance companies would be deprived of, the answer to that is don't deprive yourself of it. You've got the pen. You're at the word process. Plus the New Jersey insurance commissioner approved the plan. The New Jersey insurance commissioner did approve the plan. That's correct, Your Honor. But I, again, I would question whether or not this particular arbitration language in this particular plan would be held by the New Jersey Supreme Court to mandate arbitration of an IFPA claim. In the cases that we've looked at that are cited in the briefs, to the extent that there was compelled arbitration. Your bedrock case is Fioris, and Fioris says you can contract around it. And the argument is you did. And I would say, Your Honor, that we did not contract around arbitration of, or we did not contract for arbitration. That language in the plan, is that your language or is that the doctor's language? What do you mean by that, Your Honor? Who drafted it? The language in the plan is drafted by GEICO. Okay. Well, we've got the briefing and we've appreciated your time here. Thank you. To the extent that there's any debate about whether or not an IFPA claim should go to arbitration, we would request certification so it can be addressed by the Supreme Court. We understand your position. Thank you, Judge. Thanks. We'll go ahead and hear from counsel for the appellants. Thank you, Your Honor. I'd like to start by addressing, as it's been called, the black box of arbitration. Courts have rejected that. That is diminishing the arbitration. There's no reason to believe that an arbitrator is not going to follow the law or award statutory remedies or rights. And I think that this idea that, well, what about the state? What about the state? Where is the state? The state is not here. The state has not joined at the trial court or at this court to say that GEICO is right. This is going to impair our rights somehow. The state can still file its own action if it needs to. The state is not required to arbitrate. The state is not a party to this agreement. And I think that that is an important point to remember. And the lack of the state's participation weighs against finding that the state would believe that there is an infringement on state rights. Although the argument in your favor would be that the commissioner does approve the plan, right? I'm sorry? Although the argument in your favor would seem to be that the commissioner does approve the plan. The commissioner approved the plan. And I don't see any reason to believe that an arbitrator would not hear from the state if the state has a right to intervene. There's no authority for that position. Why don't you take the argument from Mr. Gershoff that when there is a waiver of statutory remedies and rights, a more explicit waiver is required. And that's just true in the cases, and it's not true in this instance. That argument was not one I heard until today, that there needed to be some other sort of language. Any means any. This is a dispute. This is GEICO's language. So this is a dispute, and whether or not IFPA claims can be arbitrated is really looking at the text and history of the statute. There's nothing that makes an insurance fraud prevention act statute different than consumer fraud or different than whistleblower protections or employment discrimination. These issues can be arbitrated. And I would point out, Your Honor, that when these cases first started coming into the district court, the courts were all saying none of the claims are arbitrable. RICO, common law, everything has to be brought in court. It wasn't until Judge Shipp sent some of those claims to arbitration that that course started to get corrected. And what we're asking this court to do now is to finish that course correction. There is an agreement to arbitrate. GEICO drafted it. Everything, any dispute that these doctors have with GEICO are subject to arbitration, and there's no reason to carve out the IFPA from that analysis. Okay. Thank you. Appreciate it. Thank you, Your Honor. Thank you both. We're going to take a brief recess before we call our next case.